RECEIVED

SEP 28 2022

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Court File No.: 22-mj-00742-TNL

In re: Search Warrant

**MEMORANDUM OF LAW IN**
**SUPPORT OF MEDIA**
**INTERVENORS' MOTION TO**
**INTERVENE AND UNSEAL SEARCH**
**WARRANT MATERIALS**

## INTRODUCTION

On September 13, 2022, Michael Lindell, CEO of the Minnesota-based MyPillow

company and vociferous defender of former President Donald J. Trump's false claims of election

fraud and theft, took to the airwaves to inform his followers that the FBI had seized his cell

phone at a Hardee's in Mankato, Minnesota.[1] By his own account, federal agents surrounded

Lindell, seized his phone, and asked him not to tell anybody.[2] Mr. Lindell said that agents

questioned him about, *inter alia*, Dominion Voting Systems and Mesa County Clerk Tina Peters,

a county clerk who has been indicted in Colorado.[3] Since the seizure of Mr. Lindell's cell phone,

a purported copy of the search warrant has been made public in several different fora through

---

[1] Michael Balsamo and Christina A. Cassidy, *MyPillow CEO Mike Lindell says FBI took his cellphone*, STAR TRIBUNE, Sept. 13, 2022, https://www.startribune.com/mypillow-ceo-mike-lindell-says-fbi-took-his-cellphone/600206647/?refresh=true

[2] Mike Lindell, *Exclusive: Mike Lindell Details How He Was Surrounded by FBI and His Phone Seized*, THE LINDELL REPORT, Sept. 13, 2022, https://rumble.com/v1jytqd-the-lindell-report.html, starting at 11:30.

[3] Ms. Peters was indicted in March on charges alleging that she assisted an unauthorized individual in copying sensitive data from Mesa County's election systems in 2021. See People of the State of Colorado v. Tina Peters and Belinda Knisley, Case no. 21-cr-100, Mesa County, CO, filed Mar. 8, 2022 (indictment available at https://www.courthousenews.com/wp-content/uploads/2022/03/Tina-Peters-Indictment.pdf).

1


SCANNED
SEP 28 2022
U.S. DISTRICT COURT MPLS

Mr. Lindell's own civil litigation and in media outlets.[4] Despite these publications, the authentic, original search warrant and accompanying materials, including application and any affidavits in support of the application, any warrant returns, and docket sheet remain sealed by the court and unavailable to the public. Because of the intense public interest in these events, the *Minnesota Reformer*[5] and investigative reporter Tony Webster (together, the "Media Intervenors") move to intervene in this matter for the limited purpose of unsealing and providing public access to all documents filed with this Court related to the search warrant executed on September 13, 2022, to seize Mr. Lindell's cell phone.

The Media Intervenors seek access to the following: (1) the search warrants with any attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the search warrant; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any search warrant return; (7) all docket sheet entries pertaining to fillings relating to the search warrant; and (8) any other records filed with this Court in connection with the search warrant (collectively, the "Search Warrant Materials"). The Media Intervenors are news publishers and journalists and are entitled, as members of the public, to view judicial records. The intense public interest in the events leading up to the execution of the search warrant—including Mr. Lindell's vigorous campaign to allow Mr. Trump to remain as President, the attack on the U.S. Capitol on January 6, 2021, Mr. Lindell's public statements, and the integrity of the American election apparatus—as well as the subsequent publication of the warrant, outweigh any purported interest in keeping these materials secret.

---

[4] *E.g.*, Ewan Palmer, *Read FBI's Mike Lindell Search Warrant 'Items To Be Seized'*, NEWSWEEK, Sept. 14, 2022, https://www.newsweek.com/mike-lindell-fbi-phone-seized-search-warrant-1742813.

[5] The *Minnesota Reformer* is an independent, non-profit news organization in Saint Paul, Minnesota, and part of States Newsroom, a national 501(c)(3) nonprofit supported by grants and a coalition of donors and readers.

## BACKGROUND

On September 13, 2022, agents from the Federal Bureau of Investigation ("FBI")

approached Mr. Lindell outside of a Hardee's fast-food restaurant near Mankato, Minnesota.[6]

The FBI agents seized Mr. Lindell's cell phone pursuant to a search warrant. This seizure has

been the subject of extensive media coverage in the days since, both in Minnesota and across the

country. Mr. Lindell immediately confirmed the event, speaking on his own internet television

show and talking to various media outlets, including the *Minnesota Reformer*, and sharing with

the public what Mr. Lindell said was the warrant and a letter provided to him that was signed by

Assistant United States Attorney Aaron Teitelbaum from the District of Colorado.[7]

After the seizure, Mr. Lindell filed a civil suit against Attorney General Merrick Garland,

FBI Director Christopher Wray, and the United States of America, alleging violations of his

rights under the First, Fourth, and Fifth Amendments to the United States Constitution.[8] As one

of his filings, Mr. Lindell filed a purported copy of the search warrant that FBI agents executed

on September 13, 2022. This document was initially available for the public to view, but this

Court has since sealed this document without explanation, and it remains unavailable to the

public. *See Lindell v. United States*, Case No. 22-cv-2290, ECF No. 6 (last accessed Sept. 27,

2022). The Media Intervenors are among the reporters and news organizations that have reported

on Mr. Lindell and his claims regarding the 2020 election.

---

[6] *E.g.*, Deena Winter, *Mike Lindell says the FBI seized his cell phone at a Mankato Hardee's*, MINNESOTA
REFORMER, Sept. 13, 2022, https://minnesotareformer.com/2022/09/13/mike-lindell-says-the-fbi-seized-his-cell-
phone-at-a-mankato-hardees/; Jon Swaine and Emma Brown, *FBI seizes Mike Lindell's phone in probe of Colo.
Voting machine breach*, WASHINGTON POST, Sept. 14, 2022,
https://www.washingtonpost.com/investigations/2022/09/14/mike-lindell-phone-fbi-mypillow/.

[7] *E.g.*, WCCO – CBS Minnesota, *WCCO goes one-on-one with Mike Lindell*, YouTube (Sept. 14, 2022),
https://www.youtube.com/watch?v=E2gvDTATHEg.

[8] *See* Michael J. Lindell v. United States of America et al., Case no. 22-cv-2290 (ECT/ECW) ECF No. 1, filed Sept.
20, 2022.

## ARGUMENT

**I.    The Media Intervenors have standing to intervene.**

The right of public access to judicial proceedings is a vital "safeguard against any attempt to employ our courts as instruments of persecution." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006) (quoting *In re Oliver*, 33 U.S. 257, 270 (1948)). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). The Media Intervenors are seeking to unseal documents under the First Amendment and the common law. As the Eighth Circuit has recognized, "the qualified first amendment right of public access extends to the documents filed in support of search warrants," and "the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable." *In re Search Warrant for Secretarial Area Outside Office of Gunn* (*"Gunn"*), 855 F.2d 569, 575 (8th Cir. 1988). Accordingly, "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019) (cleaned up); *see also, e.g., Doe v. Pub. Citizen*, 749 F.3d 246, 261 (4th Cir. 2014) (holding that "the presumptive right of access to judicial documents and materials under the First Amendment and common law gives [a third party consumer advocacy group] an interest in the underlying litigation" such that it had standing to appeal the district court's order denying its post-judgment motion to intervene for the limited purpose of unsealing records); *Bond v. Utreras*, 585 F.3d 1061, 1072, 1074 (7th Cir. 2009) (even in a closed case, "the general right of public access to judicial records is enough to give members of the public standing to attack a protective order that seals this information from public inspection").

**II.      The Media Intervenors have a right of access to the Search Warrant Materials.**

The right of public access to judicial proceedings and records is protected by both the

First Amendment and the common law. These rights of public access are distinct, but related. In

determining whether the First Amendment right of public access attaches to any documents,

courts look to two complementary and related considerations: experience and logic. *Press-*

*Enterprise Co. v. Superior Ct. of Cal. For Riverside Cty.*, 478 U.S. 1, 9 (1986) ("*Press-*

*Enterprise II*"); *Gunn*, 855 F.2d at 573 (plurality opinion); see also *Press-Enterprise II*, 478 U.S.

at 10 n.3 (noting that some courts have recognized a constitutional right to access pretrial

proceedings given their "importance[,]" even though they had "no historical counterpart").

Where this qualified right of access attaches, it can be overcome only if—and only to the extent

that—sealing or closure is necessary to achieve a compelling interest. *Gunn*, 855 F.2d at 574.

Separate from the constitutional right of access, the common law right of access attaches

to "judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597

(1978). Once a court determines that the common law right of access attaches, it must balance

that right against any competing interest in confidentiality. *IDT Corp. v. eBay*, 709 F.3d 1220,

1223 (8th Cir. 2013).

   **A. The First Amendment provides a right of access.**

      **i.  The First Amendment provides the public a right of access to the
          Search Warrant Materials.**

When examining whether the First Amendment guarantees the public a qualified right of

access to particular proceedings or related documents, courts emphasize two "complimentary

considerations": experience and logic. *Press-Enterprise II*, 478 U.S. at 8; *Gunn*, 855 F.2d at 572-

73. Put differently, courts consider "whether the place and process have historically been open to

the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

Courts may restrict documents or proceedings from public view if the party seeking sealing meets its burden to show that sealing is "necessitated by a compelling government interest" and "narrowly tailored to that interest." *Gunn*, 855 F.2d at 574 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Courts must make "specific, on the record findings" regarding the compelling interest shown and why sealing is narrowly tailored to that interest; these findings "must be specific enough to enable the appellate court to determine whether its decision was proper." *Id.*; *cf. Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) ("A compelling government interest permits a court to take evidence under seal as long as the court makes specific findings regarding the necessity of such a step.").

Both logic and experience show that the public has a First Amendment right of public access to the Search Warrant Materials and docket sheets. Using the *Press-Enterprise II* framework, the Eighth Circuit in *Gunn* held that the First Amendment right of access extends to materials filed in support of a search warrant, including warrant affidavits. 855 F.2d at 573; *id.* at 576 (Heaney, J., concurring and dissenting). In *Gunn*, the St. Louis Post-Dispatch and its assistant city editor sought access to materials filed in support of two search warrants, asserting a First Amendment right to inspect these documents. *Id.* at 570, 572-73. The Eighth Circuit reasoned that experience supported a constitutional right of access because under "common law judicial records and documents have been historically considered to be open to inspection by the public." *Id.* at 573 (citations omitted). The court further held that logic supported a constitutional right to access because "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and

the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id.* The court continued that "even though a search warrant is not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution. Search warrants are at the center of pre-trial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions." *Id.* Relying on this reasoning, the Eighth Circuit held that there is a qualified First Amendment right of access to search warrant materials. *Id.* at 575.

To overcome this qualified right of access, the party seeking closure must demonstrate that "closure is essential to preserve higher values and is narrowly tailored to that interest." *Id.* at 574 (cleaned up). Sealing records that are subject to this qualified right of access requires a showing that such a restriction is "necessitated by a compelling government interest." *Id.* (cleaned up). In *Gunn*, the court ultimately affirmed the district court's sealing order. *Id.* at 575. The government had made a sufficient showing that restricting access to the specific materials at issue was necessitated by a compelling government interest in preventing an ongoing investigation from being "severely compromised." *Id.* at 574. In addition to describing "in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," the documents were ill-suited to line-by-line redactions because "[v]irtually every page contain[ed] multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveal[ed] the nature, scope and direction of the government's on-going investigation." *Id.*

Here, the First Amendment right of public access applies, as it did in *Gunn*. As in that case, the Media Intervenors seek to unseal a search warrant that has already been executed, and affidavits and other materials in support of the warrant application. This warrant authorized a

7

government agency to seize property to which it otherwise would have no right. Like any other warrant, this warrant might become central to a criminal trial—and no warrant can be challenged if it remains secret. *See In re Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) ("[A warrant] affidavit must be seen to be effectively challenged."). Even though these materials are sealed at present, warrants "have been historically considered to be open to inspection by the public," and access to these materials "is important to the public's understanding of the function and operation of the judicial process and the criminal justice system." *Gunn*, 855 F.2d at 573. This is only more true here, where the subject of the search warrant has made broad public claims of persecution and abuse of governmental power. Indeed, the substance of the warrant has already been made public, and the best way for the public to evaluate properly this exercise of power is to make public the documents that support it.

Furthermore, the prosecution of Tina Peters is already underway. To the extent that this search warrant was issued in furtherance of that prosecution, the interest in continued secrecy is certainly diminished. Where specific circumstances warrant line-by-line redaction of information not already made public, such as the identity of a confidential informant, the government may request such redaction or limited sealing. *See Gunn*, 855 F.2d at 574. And ultimately, to the extent that any of the information in the Search Warrant Materials (including particularly the search warrant itself) has already been publicly revealed, that bell cannot be un-rung.

The qualified First Amendment right of access applies to the Search Warrant Materials that the Media intervenors seek. This Court should therefore make those records available to the public.

8

ii. **The First Amendment provides the public a right of access to the docket sheet in this case.**

There is also a First Amendment right of public access to docket sheets. Circuit courts that have addressed this issue directly have found that the First Amendment right of access extends to court docket sheets in both criminal and civil matters. *See, e.g.*, *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 499-500, 505 (1st Cir. 1989) (holding that "a blanket prohibition on the disclosure of records of closed criminal cases . . . implicates the First Amendment"); *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 96 (2d Cir. 2004) (holding that there is "a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect" docket sheets); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (holding a district court's maintenance of a sealed docket sheet violated the public and press's First Amendment right of access). *But see In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012) (rejecting First Amendment right of access to search warrant documents but recognizing common law right of access to the same).

Experience and logic both support the existence of a First Amendment right of access to docket sheets, which have "historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8. "Since the first years of the Republic, state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." *Hartford Courant*, 380 F.3d at 94. And logically, public access to docket sheets "plays a significant positive role" in the proper functioning of the judicial system. *Press-Enterprise II*, 478 U.S. at 8. Docket sheets are "a kind of index to judicial proceeding and documents" that "furnish an 'opportunity both for understanding the system in general and its workings in a particular case.'" *Hartford Courant*, 380 F.3d at 93 (quoting *Richmond Newspapers*, 448 U.S. at 527).

**B. Public Access to the Search Warrant Materials and docket sheet is also compelled under the common law.**

    **i.   The common law right of access applies to the Search Warrant Materials.**

The public and press also have a common law right to inspect the Search Warrant Materials. American courts have long recognized a common law right of access to "judicial records and documents." *Nixon*, 435 U.S. at 597; *eBay*, 709 F.3d at 1222. This common law right of access "bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings," *eBay*, 709 F.3d at 1222, and allows the public to "keep a watchful eye on the workings of public agencies" by "provid[ing] a measure of accountability to the public at large, which pays for the courts." *Id.* (cleaned up). When that right attaches, courts "must consider the degree to which sealing a judicial record would interfere with the interest served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Id.* at 1223; *see also United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986); *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996).

This court has discretion under the common law to determine whether sealing is proper in any particular case, but the Eighth Circuit has warned that "only the most compelling reasons can justify non-disclosure of judicial records." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (quoting *In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005)). How much weight courts give the presumption of access depends on "the role of the material at issue in the exercise of Article III judicial power" and the "resultant value of such information to those monitoring the federal courts." *eBay*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). *See also Comm'r, Ala. Dept. of Corr.*, 918 F.3d at 1169 ("When evaluating [whether good cause exists to overcome the common law right of access], a court should consider relevant

factors including 'whether the records are sought for such illegitimate purposes as to promote

public scandal or gain unfair commercial advantage, whether access is likely to promote public

understanding of historically significant events, and whether the press has already been permitted

substantial access to the contents of the records.'") (quoting *Newman v. Graddick*, 696 F.2d 796,

803 (11th Cir. 1983)).

It is beyond dispute that the warrant materials are judicial documents to which the

common law right of access applies. The *Gunn* court assumed that search warrant materials were

subject to this right. 855 F.2d at 573; *see also id.* at 576 (Bowman, J., concurring) ("The

common law right of access to judicial records . . . would yield in this case precisely the same

result that we have reached by other means."). Warrant applications and supporting affidavits are

created with the purpose of influencing judicial decisions, and courts make decisions based on

the contents of those documents. The Fourth Circuit held that search warrant affidavits are

judicial records subject to the common law right of access even before a defendant's indictment.

*Baltimore Sun Company v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989). A warrant is obtained from

judicial officers, it is filed with the district court, and it is subject to judicial review—all of which

leads to the inescapable conclusion that "affidavits for search warrants are judicial records." *Id.*

at 64.

Because the Search Warrant Materials are judicial records subject to the qualified

common-law right of access, this Court must consider "the degree to which sealing" them

"interfere[s] with the interests served by the common-law right of access" and then "balance that

interference against" any benefits of "maintaining confidentiality of the information sought to be

sealed." *eBay*, 709 F.3d at 1223.

The balance of interests here requires disclosure of the Search Warrant Materials. Journalists and the public are unable to evaluate whether the exercise of judicial and executive power associated with executing the warrant is appropriate, what information was presented to justify the warrant, or whether Mr. Lindell is the subject of unfair persecution as he adamantly maintains. This is crucial information for the public and the press to perform their oversight function, particularly as it relates to bedrock issues of election integrity and public corruption. Additionally, Mr. Lindell has publicized the entirety of the search warrant, as well as revealing that it relates to the criminal investigation of a suspected felony in the District of Colorado, and that agents questioned him about Tina Peters, the Mesa County Clerk who has been indicted over allegations of election tampering.[9] Mr. Lindell has discussed this search *ad nauseam* and filed a civil case in this Court challenging the basis of the seizure and demanding the return of the cell phone that the FBI agents seized. *See Lindell v. United States*, Case no. 22-cv-2290 (ECT/ECW), ECF No. 1 (filed Sept. 20, 2022). Transparency of the search warrant process, especially in such a public case, "operate[s] as a curb on prosecutorial or judicial misconduct." *Gunn*, 855 F.2d at 573.

There is no compelling reason that the Search Warrant Materials should remain sealed, particularly where Mr. Lindell has distributed copies of the warrant to multiple media outlets and the public must be able to evaluate this use of judicial and investigatory power. The common law right of access applies, the presumption of access is strong, and this Court should unseal and make public the requested warrant materials in this case.

      **ii.  The common law right of access applies to the docket sheets in this matter.**

---

[9] See Ewan Palmer, *Read FBI's Mike Lindell Search Warrant 'Items To Be Seized'*, NEWSWEEK, Sept. 14, 2022, https://www.newsweek.com/mike-lindell-fbi-phone-seized-search-warrant-1742813.

This common law right of public access also applies to the docket entries for the reasons stated above. *Gunn*, 855 F.2d at 575; *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982) ("The case dockets maintained by the clerk of the district court are public records."). And as stated above, the balance of interests weighs strongly in favor of disclosing the docket entries for this matter. Docket sheets provide the press and the public with an index of judicial proceedings, which is a prerequisite to meaningful public access that allows the people to determine whether judicial actions require reform. *See Hartford Courant*, 380 F.3d at 93 ("[T]he ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible.")

No government interest outweighs the public's common law right to the docket sheets in this matter. The Eighth Circuit has unsealed search warrant docket sheets in high-profile cases, including where the underlying investigations were ongoing. *Gunn*, 855 F.2d at 575. The same approach should apply here. The public has already been made aware of the existence of the warrant. If the government makes a sufficient showing that the right of public access is overcome with respect to specific, sensitive information in particular docket entries, then those entries may be redacted as necessary on a case-by-case basis. *See Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990) (ordering "release [of] a copy of the docket sheet . . . with appropriate redaction of identifying or sensitive information.").

The common law right of access attaches to docket sheets, just as it attaches to the Search Warrant Materials. This right outweighs any blanket sealing in this case, and this Court should find the public is entitled to access to the docket sheet.

### CONCLUSION

For the foregoing reasons, the Media Intervenors respectfully request that this Court grant their motion to intervene and enter an order unsealing (1) the search warrants with any

13

attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the

search warrant; (4) any motion to seal the warrant-related records; (5) any order sealing the

warrant-related records; (6) any search warrant return; (7) all docket sheet entries pertaining to

filings relating to the search warrant; and (8) any other records filed with this Court in

connection with the search warrant.


Dated:  September 27, 2022                     **SAPIENTIA LAW GROUP, PLLC**

                                              s/Christopher Proczko
                                              Christopher Proczko (#392419)
                                              120 South 6th Street, Suite 100
                                              Minneapolis, MN 55402
                                              Phone:  612-756-7100
                                              Fax: 612-756-7101

                                              christopherp@sapientialaw.com

                                              ***ATTORNEYS FOR MEDIA
                                              INTERVENORS***


4877-5610-1429, v. 1

14