UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Search Warrant                                          Case No. 22-mj-742 (TNL)

**ORDER**

Christopher Proczko, Sapientia Law Group, PLLC, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402 (for Movants Minnesota Reformer and Tony Webster); and

Jonathan Edward Jacobson, Department of Justice, 1301 New York Avenue Northwest, Suite 10th Floor, Washington, DC 20005; Aaron Teitelbaum, Department of Justice, 1801 California Street, Suite 1600, Denver, CO 80202; and Craig R. Baune and Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Plaintiff United States of America).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Movants Minnesota Reformer and Tony Webster's ("the Media Intervenors") Motion to Intervene and Unseal Search Warrant Materials. ECF No. 5. A hearing on the motion was held on October 18, 2022. ECF No. 20. Attorney Christopher Proczko appeared on behalf of the Media Intervenors. Attorneys Jonathan Edward Jacobson, Aaron Teitelbaum, Craig R. Baune, and Ana H. Voss appeared on behalf of Plaintiff United States of America. The motion was taken under advisement.

## II. BACKGROUND

On September 7, 2022, the Court issued a search warrant "authorizing the search of Michael J. Lindell for his cell phone, as well as the seizure of his cell phone and records

1

constituting fruits, evidence, or instrumentalities of certain enumerated offenses." Pl.'s Mem. in Opp. at 2, ECF No. 14. The Court sealed the search warrant application and accompanying materials at the request of the Government. ECF No. 2. On September 13, 2022, FBI agents executed the search warrant on Mr. Lindell and seized his cell phone. Pl.'s Mem. in Opp. at 2; *see also* Movants' Mem. in Supp. at 1, ECF No. 7.

On September 28, 2022, the Media Intervenors filed a Motion to Intervene and Unseal Search Warrant Materials. ECF No. 5. The Media Intervenors contend that following the execution of the search warrant, Mr. Lindell, "CEO of the Minnesota-based MyPillow company and vociferous defender of former President Donald J. Trump's false claims of election fraud and theft, took to the airwaves to inform his followers that the FBI had seized his cell phone . . . ." Movants' Mem. in Supp. at 1. The Media Intervenors argue that:

> The intense public interest in the events leading up to the execution of the search warrant—including Mr. Lindell's vigorous campaign to allow Mr. Trump to remain as President, the attack on the U.S. Capitol on January 6, 2021, Mr. Lindell's public statements, and the integrity of the American election apparatus—as well as the subsequent publication of the warrant, outweigh any purported interest in keeping these materials secret.

*Id*. at 2. Accordingly, the Media Intervenors request access to:

> (1) The search warrants with any attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the search warrant; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any search warrant return; (7) all docket sheet entries pertaining to fillings [sic] relating to the search warrant; and (8) any other records filed with this Court in connection with the search warrant (collectively, the 'Search Warrant

Materials'").

*Id*. at 2.  The Government opposes the motion, arguing that unsealing the Search Warrant Materials would "undermine the compelling law enforcement interests in protecting cooperating witnesses and avoiding the risk associated with providing a roadmap to the government's investigation in a manner highly likely to compromise future investigative steps" and "compromise recognized privacy, reputational, and due process interests of a multitude of uncharged individuals."  Pl.'s Mem. in Opp. at 1-2.  The Government, however, "does not object to unsealing the docket sheet, subject to an opportunity [to] redact any substantive material."  *Id*. at 12.

### III. DISCUSSION

The Media Intervenors and the Government agree that the First Amendment and common law provide a right of public access to judicial records.  *See* Movants' Mem. in Supp. at 5, 10; Pl.'s Mem. in Opp. at 4, 12.  "The Supreme Court has recognized a First Amendment and common law right of public access to court proceedings and records."  *Matter of Up North Plastics, Inc.*, 940 F.Supp. 229, 231 (D. Minn. 1996) (citations omitted); *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)) ("There is a common-law right of access to judicial records.").

The First Amendment "protects the right of the public and the press to attend criminal trials."  *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572 (8th Cir. 1988) (*Gunn I*) (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558-81

3

(1980) (plurality)). The Eighth Circuit has concluded that this right of public access extends to "documents filed in support of search warrant applications." *Id*. at 573. The Eighth Circuit highlighted the fact that "search warrant applications and receipts are routinely filed with the clerk of court without seal," "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process," and "a search warrant is certainly an integral part of a criminal prosecution." *Id*.

The First Amendment right of public access, however, "is not absolute; it is a qualified right." *Id*. at 574 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) (*Press-Enterprise II*); *Globe Newspaper*, 457 U.S. at 606). "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that [sealing] is essential to preserve higher values and is narrowly tailored to that interest." *Id*. (quotations and citations omitted). The party requesting sealing "must show that such a restriction of the [F]irst [A]mendment right of public access is necessitated by a compelling government interest." *Id*. (citations omitted). The district court must conduct a "careful balancing of . . . the conflicting interests in access and privacy." *Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Publishing Company*, 895 F.2d 460, 466 (8th Cir. 1990) (*Gunn II*). "If the district court decides to . . . seal certain documents, it must explain why . . . sealing [is] necessary and why less restrictive alternatives [are] not appropriate." *Gunn I*, 855 F.2d at 574 (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510-11 (1984) (*Press-Enterprise I*)).

Similarly, the common-law right of public access "is not absolute." *Up North*

*Plastics*, 940 F.Supp. at 231 (citing *Nixon*, 435 U.S. at 597-98). "Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223. In other words, courts are tasked with "weighing the interests advanced by the parties in light of the public interest and the duty of the courts." *Nixon*, 435 U.S. at 602. Courts should also consider whether less restrictive alternatives are appropriate. *See IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995)) ("[I]t is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document").

Both the First Amendment and common law right of public access lead the Court to consider whether (1) the party seeking sealing has a sufficiently compelling interest in confidentiality of the information that outweighs the public's right of access, and (2) there is a less onerous or more narrowly tailored alternative to sealing. Thus, in general, analyzing the right of public access under the First Amendment and common law yields the same result. *See, e.g., Gunn I*, 855 F.2d at 576 (Bowman, J., concurring) ("The common law right of access to judicial records . . . would yield in this case precisely the same result that [the Supreme Court] reached by other means," specifically, the First Amendment right of public access); *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1375 (8th Cir. 1990) (holding that the court's "decision must be the same whether the case is governed by a First Amendment qualified right of access or a common law right of

access").

### A. Balancing the Parties' Competing Interests

The Media Intervenors contend that the Government does not have a compelling interest in keeping the Search Warrant Materials sealed for several reasons, including: (1) the search warrant has already been executed; (2) the search warrant might become central to a criminal trial, and no warrant can be challenged if it remains secret; (3) access to the Search Warrant Materials is important to the public's understanding of the function of the judicial process; (4) the subject of the search warrant, Mr. Lindell, "has made broad public claims of persecution and abuse of governmental power," and "the best way for the public to evaluate properly this exercise of power is to make public the documents that support it"; (5) to the extent that the search warrant was issued in furtherance of the prosecution of Tina Peters, the interest in continued secrecy is diminished as the prosecution of Ms. Peters is already underway; (6) the Government can request redactions or limited sealing if specific circumstances warrant line-by-line redaction of information; and (7) certain information in the Search Warrant Materials, including the search warrant itself, has already been publicly revealed. *See* Movants' Mem. in Supp. at 7-8, 12. Further, the Media Intervenors contend that the Court must provide public access to the Search Warrant Materials because they would provide "crucial information for the public and the press to perform their oversight function, particularly as it relates to bedrock issues of election integrity and public corruption." *Id*. at 12.

The Government contends that unsealing the Search Warrant Materials "would severely compromise the government's on-going [criminal] investigation, and it would

6

also harm the recognized privacy, reputational, and due process interests of various individuals." Pl.'s Mem. in Opp. at 3. Specifically, the Government argues that the Search Warrant Materials, particularly the Affidavit in Support of Application for Warrant ("Affidavit"), describe in considerable detail the nature, scope, and direction of the Government's investigation and the individuals and specific activities involved. *Id*. at 7, 13-14. The Government contends that "[t]he privacy and reputational interests of these individuals, many of whom may never be indicted and whose position on public dissemination of the Search Warrant Materials is unknown, strongly supports non-disclosure here." *Id*. at 10, 13. Further, the Government notes that "many of the allegations in the [A]ffidavit are supported by information obtained from recordings or 'obtained from confidential informants.'" *Id*. at 7 (quoting *Gunn I*, 855 F.2d at 574). At the hearing, the Government contended that revealing any of the Search Warrant Materials, other than the docket sheet entries, would reveal information about details of the investigation that the Government has not publicly confirmed.

The Court recognizes, and the Government concedes, that the Search Warrant Materials in this case involve matters of great public concern, as they relate to allegations involving the legitimacy and security of this Country's presidential election and political process. The Court agrees with the Media Intervenors that there is a strong public interest in "bedrock issues of election integrity and public corruption," and public trust and confidence in national elections is a matter of "intense public interest."[1] *See* Movants'

---

[1] The Court notes that elections are at the heart of this Country's democracy. The "intense public interest in these events," *see* Movants' Mem. in Supp. at 2, creates a greater public interest in obtaining the Search Warrant Materials than there would be in a typical case.

7

Mem. in Supp. at 2, 12. In balancing the Government's asserted compelling need for sealing the Search Warrant Materials against the public's interest in disclosure, however, the Court finds that the Government has established a compelling interest that outweighs any public interest in unsealing the full contents of the Search Warrant Materials.

The Court has carefully reviewed the Search Warrant Materials and finds that the Government has established that restricting public access to the materials "is necessitated by a compelling government interest—the on-going investigation." *See Gunn I*, 855 F.2d at 574. In *Gunn I*, federal agents executed more than 40 search warrants in connection with a nationwide investigation into alleged fraud and bribery in the Department of Defense and in the defense industry. *Id*. at 570. "The nature and scope of the investigation and the dramatic manner in which the search warrants were executed attracted intense public interest and considerable news media attention." *Id*. The district court denied the media intervenors' motion to unseal the search warrant materials, finding that "unsealing the affidavits and other materials would prejudice the government's on-going investigation by identifying as-yet-unnamed targets, by revealing the scope, status and direction of the investigation, by affording individuals the opportunity to tailor their testimony and destroy documents and other evidence, and by prematurely disclosing the existence of wiretaps and other investigatory tools." *Id*. at 571. The Eighth Circuit agreed with the district court and concluded that an on-going investigation is a compelling government interest that supports restricting public access to search warrant affidavits and other materials attached to the search warrants. *Id*. at 574. This is particularly the case when the "documents describe in considerable detail the nature, scope and direction of the government's investigation and

8

the individuals and specific projects involved," or include "excerpts of telephone conversations obtained through court-authorized electronic surveillance or information obtained from confidential informants or both." *Id*. Failing to protect the integrity of on-going criminal investigations and releasing such documents creates "a substantial probability that the . . . investigation would be severely compromised." *Id*. Further, "the procedural posture of the government's criminal investigation must be considered in the balancing process and [ ] the absence of an indictment weighs heavily in favor of the privacy interests and non-disclosure." *Gunn II*, 895 F.2d at 466. Specifically, "the pre-indictment status of the government's criminal investigation tips the balance decisively in favor of the privacy interests and against disclosure of even the redacted versions of the search warrant affidavits . . . ." *Id*. at 467.

As the Eighth Circuit in *Gunn I* concluded, the Search Warrant Materials here "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," and "[t]here is a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *See* 855 F.2d at 574. The Search Warrant Materials contain "highly sensitive" information that "relate[s] to an on-going federal criminal investigation" that could "be severely harmed by premature disclosure of such materials." *See* Pl.'s Mem. in Opp. at 4 n.2, 7; *see also Gunn I*, 855 F.2d at 574. The Affidavit, in particular, includes a degree of "factual detail and specificity" that goes well beyond the information supplied in a typical warrant affidavit, and contains much information obtained from recordings or confidential informants. *See* Pl.'s Mem. in Opp.

9

at 7; *see also Gunn I*, 855 F.2d at 574. Thus, the Court agrees with the Government that full disclosure of the Search Warrant Materials would "undermine the compelling law enforcement interests in protecting cooperating witnesses and avoiding the risk associated with providing a roadmap to the government's [on-going] investigation in a manner highly likely to compromise future investigative steps." *See* Pl.'s Mem. in Opp. at 1-2.

Further, unsealing the Search Warrant Materials would "compromise recognized privacy, reputational, and due process interests of a multitude of uncharged individuals." *See* Pl.'s Mem. in Opp. at 1-2. The Search Warrant Materials "implicate numerous individuals, . . . many of whom may never be indicted and whose position on public dissemination of the Search Warrant Materials is unknown." *See* Pl.'s Mem. in Opp. at 10; *see also Up North Plastics*, 940 F.Supp. at 232 (citing *Gunn II*, 895 F.2d at 467) ("Individuals who have not been indicted in a criminal investigation, but are implicated in criminal activity in a search warrant affidavit, may have a privacy interest in the affidavit."). Here, as in *Gunn II*, the Search Warrant Materials "implicate some individuals directly in criminal misconduct, others only indirectly. Disclosure could seriously damage their reputations and careers. Disclosure would place those individuals in essentially the same precarious position as unindicted co-conspirators." *See* 895 F.2d at 467. "[T]he procedural posture of the [G]overnment's criminal investigation," here, at the pre-indictment stage, "weighs heavily in favor of the privacy interests and non-disclosure." *See id.* at 466.

Accordingly, considering all of the circumstances, the Court finds that restricting public access to the Search Warrant Materials is necessitated by a compelling

governmental interest, and that the interests served by maintaining confidentiality of the information outweighs the interests served by the public's right of access.

### B. Less Restrictive or More Narrowly Tailored Alternative

The Court must also consider whether a less restrictive or, in other words, a more narrowly tailored alternative exists to sealing the entire contents of the Search Warrant Materials. *See Gunn I*, 855 F.2d at 574 (noting that documents may be sealed if the sealing "is narrowly tailored"); *IDT Corp.*, 709 F.3d at 1224 (quoting *Amodeo*, 44 F.3d at 147) (concluding that courts may "edit and redact a judicial document in order to allow access to appropriate portions of the document"). In *Gunn I*, the Eighth Circuit agreed with the district court's determination that "redaction [of the search warrant materials] on a line-by-line basis was impracticable because of the complex and interrelated nature of the allegations and the large number of individuals and activities involved." 855 F.2d at 571, 574. The *Gunn I* court noted that "[v]irtually every page [of the sealed documents] contain[ed] multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's on-going investigation." *Id*. at 574. Accordingly, the court concluded that less restrictive alternatives to keeping the search warrant materials sealed were impracticable. *Id*. at 575.

The Government contends that line-by-line redaction of the Search Warrant Materials, particularly the Affidavit, "would be practically impossible" for the same reasons the Eighth Circuit found in *Gunn I*, namely, the materials contain references to various recordings, individuals other than the subject of the search warrant, and the nature,

11

scope, and direction of the Government's on-going investigation. Pl.'s Mem. in Opp. at 8 (citing *Gunn I*, 855 F.2d at 574). At the hearing, the Government contended that there is no meaningful distinction between the circumstances in this case and those that were presented to the Eighth Circuit in *Gunn I* and *Gunn II*, and the Court should therefore keep all the Search Warrant Materials sealed.

The Court closely read the Search Warrant Materials before signing them and has carefully reviewed *in camera* the Search Warrant Materials in connection with the Media Intervenors' motion. As the Eighth Circuit did in *Gunn I*, the Court finds that less restrictive alternatives are impracticable. The Affidavit consists of 165 paragraphs in 80 pages plus attachments and includes tremendous details with significant specificity. The Search Warrant Materials are extensive and "[v]irtually every page contains multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's on-going investigation." *See Gunn I*, 855 F.2d at 574. Further, the Search Warrant Materials include references to "the complex and interrelated nature of the allegations and the large number of individuals and activities involved." *See id*. at 571, 574. Accordingly, there is no practical way to order redactions.

In sum, the Court finds that unsealing the Search Warrant Materials "would prejudice the government's on-going investigation" . . . [and] that redaction on a line-by-line basis [is] impracticable." *See id*. at 571. *Gunn* is long-standing precedent, has established expectations for parties to guide their actions, and its rationale is as sound under the facts of this case as when *Gunn* was decided. Thus, the Court will keep the Search

Warrant Materials sealed. The Court will, however, unseal the docket sheet for this case. *See id*. at 575 (quoting *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982)) ("The case dockets maintained by the clerk of the district court are public records."). Before the Court unseals the docket sheet, the Government may review the docket entries and propose redactions for any revealing references. *See id*. Accordingly, on or before December 1, 2022, the Government shall file under seal an *ex parte* submission proposing potential redactions, if any, to the docket sheet.

## IV. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Media Intervenors' Motion to Intervene and Unseal Search Warrant Materials, ECF No. 5, is **GRANTED IN PART** and **DENIED IN PART**. The docket sheet will be unsealed after the Court considers the Government's proposed redactions. The Government shall submit its proposed redactions to the Court on or before December 1, 2022. The Media Intervenors' motion is otherwise denied.

Dated: November __22__, 2022         *s/ Tony N. Leung*
                                     Tony N. Leung
                                     United States Magistrate Judge
                                     District of Minnesota

                                     *In re: Search Warrant*
                                     Case No. 22-mj-742 (TNL)